IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

**MADISON B. HANNAH,**

    **Plaintiff,**

v.                                        Civil Action No.   7:20CV00662

**UNITED STATES OF AMERICA,**

    **Defendant.**

## COMPLAINT

1. Plaintiff brings this action pursuant to the Federal Tort Claims Act, codified at 28 U.S.C. § 1346(b) and 28 U.S.C. §§ 2671 *et. seq,* for personal injuries caused by the negligent and wrongful acts of employees and agents of the United States while acting within the scope of their offices and employment with the Monroe Health Center. Plaintiff seeks compensatory and punitive damages, attorney's fees, pre-judgment and post-judgment interest, and costs.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346(b).

3. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2) and 1402(b), as the acts and omissions occurred in the Western District of Virginia, and the Plaintiff resides in the Western District of Virginia.

4. All conditions precedent to jurisdiction under the Federal Tort Claims Act have been met. Plaintiff filed a claim for administrative settlement of this matter with the Department of Health and Human Services. By letter dated May 26, 2020, the Department of Health and

Human Services responded to Ms. Hannah's claim.  Thus, suit may now be filed in accordance with the Federal Tort Claims Act, specifically 28 U.S.C. §§ 1346(b), 2671-2680 and 2401(b).

## PARTIES

5.  Plaintiff Madison B. Hannah is a citizen of the Commonwealth of Virginia, residing in New Castle, Virginia, in the Western District of Virginia.

6.  Defendant United States of America ("USA") is sued under the Federal Tort Claims Act for torts committed by employees and/or agents of the Monroe Health Center in Craig County, Virginia.  Defendant United States of America, through its agency, the Department of Health and Human Services, operates Federal Qualified Health Centers, including that known as Monroe Health Center, which operates at various locations in West Virginia and Virginia, including Craig County, Virginia.  As a Public Health Service in accordance with the Federally Supported Health Centers Assistance Act ("FSHCAA"), Monroe Health Center is deemed a federal government entity, and its employees are deemed federal government employees for purposes of claims asserted against it under the Federal Tort Claims Act, pursuant to 42 U.S.C. § 233(g)-(n).  At all times relevant to this action, the employees, physicians, and family nurse practitioners of Monroe Health Center were employees and/or agents of Monroe Health Center and were acting within the scope of their employment to further the business of the Defendant, USA.

## FACTS

7.  The Monroe Health Center is a Federally Qualified Health Center, offering services at Union, West Virginia (main site), Peterstown, West Virginia (satellite clinic), Craig County,

Virginia (satellite clinic), Forest Hill, West Virginia (satellite site), and school wellness centers in Monroe and Craig County Schools.

8. The Craig County School Board entered into an agreement with Monroe Health Center, a Health Center Program Grantee under 42 U.S.C. § 254(b) and deemed Public Health Service employee under 42 U.S.C. § 233(g)-(n), to establish a clinic in Craig County, Virginia and provide health services.

9. In particular, the agreement provided that Monroe Health Center would provide free sports physicals for athletes at Craig County High School.

10. Monroe Health Center is an FTCA deemed facility, with medical malpractice coverage provided under the FTCA.

11. Monroe Health Center's Compliance Policy and Procedures provides in part:

I. Quality

Quality services are services that are provided in a safe, effective, recipient-centered, timely, equitable, and recovery-oriented fashion.

The MHC is committed to the ongoing improvement of the quality of care its consumers receive, as evidenced by the outcomes of that care. The organization continuously strives to ensure that:

    1. The treatment provided incorporates evidence based, effective practices.

    2. The treatment and services are appropriate to each patient's needs, and available when needed.

    3. Risk to patients, providers and others is minimized, and errors in the delivery of services are prevented.

    4. Patients' individual needs and expectations are respected.

    5. Patients – or those whom they designate – have the opportunity to participate in decisions regarding their treatment; and services are provided with sensitivity and caring.

    6. Procedures, treatments and services are provided in a timely and efficient manner, with appropriate coordination and continuity across all phases of care and all providers of care.

12. Monroe Health Center is responsible for following up on deficiencies and taking corrective action if necessary as well as for assuring that quality services are provided.

13. An August 23, 2017 memo to the Monroe Health Center Board of Trustees regarding a compliance update reported concerns about the security of the Wellness Clinic at Craig County High School. Administrators stated that they would discuss it with the Craig County Board of Education.

14. Raschid Ghoorahoo ("Ghoorahoo"), a Family Nurse Practitioner, was hired by Monroe Health Center and provided services at the Wellness Clinic at Craig County High School beginning in November or December 2017. Monroe Health Center was aware that Ghoorahoo had been employed by a number of different clinics prior to his employment with Monroe Health Center, each time for a fairly short duration.

15. The new provider reviews for December 2017 note that there were four instances when Raschid Ghoorahoo spent prolonged time with a patient, purportedly reviewing the students' signs and symptoms. This was noted as a concern by Monroe Health Center.

16. On May 2, 2018, Madison Hannah, then a student at Craig County High School, arrived for her sports physical at the Wellness Center run by Monroe Health Center at the high school. Ms. Hannah had also received her sports physical at the facility the prior year from a female physician. Because Ms. Hannah played several school sports, including basketball, volleyball, and softball, she had had numerous sports physicals over the years.

17. Ms. Hannah was placed in a waiting area to see Ghoorahoo, the Family Nurse Practitioner employed by Monroe Health Center, and a nurse took her vital signs. Ghoorahoo was a health care provider under the Virginia Medical Malpractice Act, Virginia Code § 8.01-581.1, *et seq*.

18. Once Ghoorahoo became available, he introduced himself to Ms. Hannah as Dr. Ghoorahoo, although he was not a physician, and moved Ms. Hannah to his office in the rear of the Wellness Center.

19. No nurse or any other person was present during Ghoorahoo's examination of Ms. Hannah, and the door was closed.

20. During his physical examination of Ms. Hannah, Ghoorahoo inappropriately touched Ms. Hannah, placing the stethoscope down her shirt and under her bra, and then massaging her breast with his fingers. He placed the stethoscope under Ms. Hannah's shirt and bra and fondled her breast several times during the physical examination.

21. This physical examination by Ghoorahoo was different from any that Ms. Hannah had received during previous sports physicals. In the sports physical conducted in the prior year, the female health care provider listened to Ms. Hannah's heart through her clothes. Further, unlike in other examinations, Ghoorahoo did not ask Ms. Hannah to do the duck walk test or to

move her arms in circular motions (to check her rotator cuffs). Nor did Ghoorahoo test her reflexes as had been done in other sports physicals.

22. In fact, the only other thing that Ghoorahoo did during this physical examination, other than placing the stethoscope under her bra and inappropriately fondling her breast, was to have Ms. Hannah bend over to check her spine. At that time, Ghoorahoo then ran his fingers up and down her spine repeatedly, for an unusually long period of time.

23. Ghoorahoo claimed that he had been checking Ms. Hannah for a heart murmur and called her mother to tell her that he would be referring Ms. Hannah for further testing for such a murmur. However, he also told Ms. Hannah's mother that Ms. Hannah probably did not actually have a heart murmur, and Ghoorahoo never made any such referral for further testing.

24. At all material times, Ghoorahoo was a health care provider at Monroe Health Center, who provided medical care/treatment to Plaintiff. At all material times, Ghoorahoo was acting within the scope of his employment with Monroe Health Center.

25. At all material times, Ghoorahoo was subject to Monroe Health Center policies and procedures applicable to the provision of medical care at Monroe Health Center.

26. At all material times, Ghoorahoo was subject to the supervision and management of Monroe Health Center.

27. Monroe Health Center failed to monitor the conduct of Ghoorahoo and failed to properly supervise Ghoorahoo in the performance of school physicals at the Wellness Center. Monroe Health Center was aware in December 2017 that Ghoorahoo was spending an excessive amount of time with each patient, which should have raised a red flag for Monroe Health Center.

Monroe Health Center was also aware that Ghoorahoo had previously worked at a number of different clinics and never stayed at any of them for very long.

28. Monroe Health Center should have had a female present during Ghoorahoo's examinations of all female students, including that of Ms. Hannah. Monroe Health Center should have assured that Ghoorahoo did not misrepresent his status as a family nurse practitioner by introducing himself as a doctor to students.

29. Upon information and belief, Ghoorahoo spent prolonged periods of time with students during their closed door, unchaperoned examinations.

30. After these events, Monroe Health Center refused to provide Ms. Hannah's medical records, after they had been requested.

31. Ms. Hannah suffered the inappropriate touching of her breast during her sports physical examination, trauma, physical and mental anguish, severe emotional distress, pain, and suffering as a result of the medical malpractice, negligence, and wrongful acts of the agents of Monroe Health Center. Ms. Hannah continues to suffer severe emotional distress as a result of the actions of employees and agents of Monroe Health Center. Ms. Hannah's injuries, emotional distress, and suffering are a direct result of the wrongful acts, negligence and deviation from the applicable standard of care by employees/agents of Monroe Health Center, including, but not limited to Ghoorahoo.

## COUNT ONE – MEDICAL MALPRACTICE

32. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

33. Ms. Hannah was under the care and treatment of Monroe Health Center when she had her sports physical at Monroe Health Center's Wellness Center at Craig County High School

on May 2, 2018. Monroe Health Center and its agents and/or employees were under a duty to provide Ms. Hannah with medical treatment and care in compliance with the standard of care existing in this Commonwealth.

34. Monroe Health Center and its agents and employees, including Ghoorahoo, had a duty to render that degree of knowledge, skill, diligence and care to Ms. Hannah that is rendered by a reasonably prudent health care provider, including a family nurse practitioner, in performing sports physicals and physical examinations in this Commonwealth.

35. The care and treatment which Defendant and its agents and/or employees provided to Ms. Hannah deviated from the applicable standard of medical care and treatment. Specifically, Defendant's agent/employee, Ghoorahoo, inappropriately touched Ms. Hannah during the sports physical, including by placing the stethoscope down her shirt and under her bra and then massaging her breast with his fingers. Defendant's agent/employee, Ghoorahoo, placed the stethoscope under her shirt and bra and fondled her breasts several times during the physical examination.

36. Defendant and its agents and/or employees failed to provide Ms. Hannah with that degree of skill and diligence practiced by a reasonably prudent practitioner in his field of practice or specialty in this Commonwealth.

37. The acts and omissions of the Defendant and its agents and/or employees, including Ghoorahoo, during Ms. Hannah's sports physical deviated from the applicable standard of medical care and treatment and were wrongful and negligent. Defendant and its agents and/or employees had a duty to exercise adequate care and provide appropriate medical treatment. Specifically, the Defendant and its agents and/or employees were acting within the scope of their

office of employment and had a duty to exercise ordinary care and provide appropriate medical treatment during Ms. Hannah's sports physical.

39. The acts and omissions of the Defendant and its agents and/or employees, including Ghoorahoo, of inappropriately touching and fondling Ms. Hannah's breasts during her sports physical fall below the level of skill and practice employed by a reasonably prudent family nurse practitioner.

40. Defendant and its agents and/or employees breached their duty to Ms. Hannah when they failed to provide adequate medical care, by inappropriately touching and fondling Ms. Hannah's breasts, without her consent, during the physical examination.  Defendant and its agents and/or employees also breached their duty to Ms. Hannah when they failed to provide adequate medical care, by Ghoorahoo running his fingers up and down her spine for a lengthy period of time, which is more than is warranted in an examination of a patient's spine.

41. Defendant and its agents and/or employees failed to exercise the appropriate degree of skill, care and diligence practiced by a reasonably prudent practitioner in the field of practice or specialty in this Commonwealth.

42. At all relevant times, Defendant's agents and/or employees, including Ghoorahoo, were acting within the scope of their employment.

43. The negligence of Defendant and its agents and/or employees in failing to provide adequate medical care and treatment was the direct and proximate cause of Ms. Hannah's injuries.

44. Further, Monroe Health Center, through its employees and/or agents, was negligent and acted in violation of the standard of care in permitting Ghoorahoo to provide school

physicals to female students at the Craig County High School Wellness Center, without a nurse or chaperone in attendance.

45. Virginia Administrative Code, 18 VAC 90-30-220, Grounds for Disciplinary Action Against the License of a Licensed Nurse Practitioner, provides, in part: "The board may deny licensure or relicensure, revoke or suspend the license, or take other disciplinary action upon proof that the nurse practitioner: … (2) Has directly or indirectly represented to the public that the nurse practitioner is a physician, or is able to, or will practice, independently of a physician." Ghoorahoo falsely represented to patients at the Craig County High School Wellness center, including Ms. Hannah, that he was a physician. Monroe Health Center, through its employees and/or agents, was negligent in failing to assure that Ghoorahoo was not holding himself out as a doctor to the patients at the Wellness Center.

46. Monroe Health Center had a duty to protect the health and safety of its female patients at the Craig County High School Wellness Center, including Ms. Hannah.

47. Monroe Health Center had a duty to assure that quality health care services were provided to patients at the Craig County High School Wellness Center, including Ms. Hannah.

48. Monroe Health Center had a duty to provide a safe and secure environment for its patients, including Ms. Hannah. Monroe Health Center had a duty to provide services in a safe, effective, recipient-centered, timely, equitable, and recovery-oriented fashion.

49. Monroe Health Center breached its duty to Ms. Hannah to provide quality health care services in a safe fashion and its acts and omissions fell below the applicable standard of care when it failed to provide a safe and secure environment at the Craig County High School

Wellness Center and when it failed to establish and/or enforce a medical policy requiring Ghoorahoo to offer and/or provide a chaperone to female students during school physicals.

50. The negligence and breaches of the standard of care on the part of Defendant and its agents and/or employees in failing to provide quality health care services, inappropriately touching Ms. Hannah's breast during her sports physical examination, failing to provide a safe and secure environment, and failing to provide a chaperone for female students during school physical examinations, including that of Ms. Hannah, were the direct and proximate cause of Ms. Hannah's injuries.

51. As a result of these acts and omissions, Ms. Hannah was exposed to an unsafe environment, did not receive quality health care services, received inadequate care and treatment, and suffered injuries. She has experienced the inappropriate touching of her breast during her sports physical examination, without her consent, trauma, physical and mental anguish, and severe emotional distress. Ms. Hannah continues to suffer severe emotional distress as a result of the negligence of the Defendant and the Defendant's agents and employees.

52. Under the laws of the Commonwealth of Virginia, a private person would be liable to the Plaintiff for these negligent acts and omissions. In accordance with 28 U.S.C. § 1346(b), the USA is liable to Plaintiff for her damages.

## COUNT TWO – NEGLIGENT RETENTION

53. The preceding paragraphs of this Complaint are incorporated by reference herein.

54. Monroe Health Center owed a duty to Ms. Hannah to exercise due care in the selection and retention of Monroe Health Center's employees and/or agents, and not to retain an employee and/or agent whom Monroe Health Center knew or should have known was dangerous

11

or likely to harm others. Monroe Health Center had a duty to Ms. Hannah and those persons receiving medical treatment at Monroe Health Center, to ensure that its employees and/or agents exercised the appropriate degree of skill, care and diligence practiced by a reasonably prudent practitioner in their field of practice or specialty in this Commonwealth.

55. Monroe Health Center, through its employees and/or agents, was aware that Raschid Ghoorahoo was spending long periods of time with student patients, that Ghoorahoo did not have a chaperone present when he performed examinations of female patients, and that Ghoorahoo was misrepresenting himself as a doctor when he introduced himself to students. Monroe Health Center was further aware that Ghoorahoo had worked for a number of different clinics in his past employment and did not stay at any of them for very long. Monroe Health Center was aware, or should have been aware, that Ghoorahoo did not exercise the appropriate degree of skill, care and diligence practiced by a reasonably prudent practitioner in his field of practice or specialty in this Commonwealth. Monroe Health Center, through its employees and/or agents, was aware, or should have been aware, that Ghoorahoo was a danger to patients, and that Ghoorahoo's female patients were exposed to a foreseeable risk of harm. Monroe Health Center knew, or should have known, that Ghoorahoo posed an unreasonable risk of harm to others, including Ms. Hannah.

56. Nevertheless, Monroe Health Center, through its employees and/or agents, continued to permit Ghoorahoo to see female patients without a chaperone and continued to employ Ghoorahoo as the Family Nurse Practitioner at Monroe Health Center's Craig County High School Wellness Center. Monroe Health Center failed to prevent further harm by Ghoorahoo by

retaining Ghoorahoo as an employee and/or agent and permitting Ghoorahoo to see female patients, including Ms. Hannah, at the Craig County High School Wellness Center.

57. Monroe Health Center breached its duty to exercise due care in the selection and retention of its employees and/or agents when it retained Ghoorahoo as an employee and/or agent. Monroe Health Center breached its duty to ensure that its employees and/or agents complied with the appropriate standard of care and that its employees and/or agents demonstrated the appropriate degree of skill, care and diligence practiced by a reasonably prudent practitioner in their field of practice or specialty in this Commonwealth.

58. Monroe Health Center breached its duty not to retain an employee and/or agent whom Monroe Health Center knew or should have known was dangerous or likely to harm others.

59. Monroe Health Center knew or should have known that Ghoorahoo posed an unreasonable risk of harm to others, yet it failed to intervene to attempt to prevent further harm by Ghoorahoo, and Ghoorahoo subsequently injured Ms. Hannah. Monroe Health Center breached its duty to exercise due care in the selection and retention of Monroe Health Center's servants when it permitted Ghoorahoo to continue seeing female patients, including in the absence of a chaperone.

60. The careless, reckless and negligent actions by Monroe Health Center proximately caused Ms. Hannah's injuries.

61. As a result of Defendant's negligence, Ms. Hannah was exposed to an unsafe environment, did not receive quality health care services, received inadequate care and treatment, and suffered injuries. She has experienced the inappropriate touching of her breast during her

sports physical examination, without her consent, trauma, physical and mental anguish, and severe emotional distress. Ms. Hannah continues to suffer severe emotional distress as a result of the negligence of the Defendant and the Defendant's agents and employees.

62. Under the laws of the Commonwealth of Virginia, a private person would be liable to the Plaintiff for these negligent acts and omissions. In accordance with 28 U.S.C. § 1346(b), the USA is liable to Plaintiff for her damages.

WHEREFORE, Plaintiff requests damages as follows:

A. For Count I, compensatory damages in the amount of two million dollars ($2,000,000.00);

B. For Count II, compensatory damages in the amount of two million dollars ($2,000,000.00);

C. For reasonable attorney's fees, expert fees, costs incurred in prosecuting this action, pre-judgment and post-judgment interest, and any other costs and fees deemed proper; and

F. For such further relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff requests a jury trial on issues raised in this Complaint, with regard to any issues that may be triable by a jury.

Respectfully submitted,

MADISON B. HANNAH

By: */s/ Carrol M. Ching*
Counsel

John P. Fishwick, Jr., Esquire (VSB #23285)
John.Fishwick@fishwickandassociates.com
Carrol M. Ching, Esquire (VSB # 68031)
Carrol.Ching@fishwickandassociates.com
Daniel J. Martin, Esquire (VSB #92387)
Daniel.Martin@fishwickandassociates.com
Fishwick & Associates PLC
30 Franklin Road SW, Suite 700
Roanoke, Virginia 24011
(540) 345-5890 Telephone
(540) 345-5789 Facsimile

*Counsel for Plaintiff*