IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MADISON B. HANNAH, | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 7:20-cv-662 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | By:    Michael F. Urbanski |
| Defendant. | ) | Chief United States District Judge |

## MEMORANDUM OPINION

This matter is before the court on the United States' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), ECF No. 15, and plaintiff Madison B. Hannah's motion to strike several exhibits and all extraneous materials outside of the pleadings included in the United States' brief in support of its motion to dismiss, ECF No. 24. For the following reasons, the court **DENIES** the motion to dismiss Count I, alleging medical malpractice, **GRANTS** the motion to dismiss Count II, alleging negligent retention, and **DENIES** the motion to strike certain exhibits.

## I.

Plaintiff Madison B. Hannah is a former student of Craig County High School and was a student at the time of the alleged events. Compl., ECF No. 1, at ¶ 16. The United States, through the Department of Health and Human Services, operates federally qualified health centers, one of which is Monroe Health Center ("MHC"). Pursuant to the Federally Supported Health Centers Assistance Act, MHC is deemed a federal government entity, and its employees are deemed federal government employees for purposes of claims brought under the Federal Tort Claims Act ("FTCA") pursuant to 42 U.S.C. § 233(g)-(n). Craig County High School

entered into an agreement with MHC to provide free sports physicals for students. Compl. at ¶ 9. Raschid Ghoorahoo was a family nurse practitioner hired by MHC in November or December 2017. Id. at ¶ 14.

In 2017, Hannah received her sports physical, which as a student athlete she had done many times before, from a female physician. See id. at ¶ 17. On May 2, 2018, Hannah went to the MHC for her sports physical and was seated in a waiting room where a nurse took her vital signs. Shortly afterward, Ghoorahoo introduced himself to Hannah as a doctor and accompanied her to his office near the back of the building. Id. at ¶ 19. There was no nurse present in Ghoorahoo's office, and the door was closed. Id. at ¶ 20.

Hannah alleges that during the physical examination, Ghoorahoo placed the stethoscope under her bra and began massaging her breast with his fingers. He continued to fondle her breast several times. Id. In years prior, Hannah had never had a healthcare provider put the stethoscope underneath her clothes. Id. at ¶ 21. Hannah alleges that Ghoorahoo did not perform other customary procedures, including checking her rotator cuffs or reflexes. Id. The only other thing Ghoorahoo did was to have Hannah bend over to check her spine. Ghoorahoo ran his fingers up and down her spine for an unusually long amount of time. Id. at ¶ 22.

Ghoorahoo called Hannah's mother and stated that during the examination he was checking for an undiagnosed heart murmur and would refer Hannah for further testing. He also stated that it was unlikely that Hannah had the heart murmur.

On May 11, 2018, Hannah's mother called the site manager for the Wellness Center and reported that her daughter "felt very, very uncomfortable [when Ghoorahoo] spent a long

period [of] time examining her in and around her chest/breasts area [while] attempting to find a heart murmur [because] no female was also present for the examination . . . ." Incident Report, ECF No. 16-7, at 1. The site manager then reported the incident to MHC officials. Ghoorahoo was removed from patient care pending an internal investigation. ECF No. 16-8.

On December 19, 2019, Hannah's mother filed an administrative claim with the Department of Health and Human Services, detailing the incident with Ghoorahoo. See Admin. Claim, ECF No. 16-14. On May 26, 2020, the Department of Health and Human Services denied said claim.

On November 10, 2020, Hannah brought suit under the FTCA, alleging medical malpractice (Count I) and negligent retention (Count II), asserting that MHC breached its duty when it knew, and failed to take action, that Ghoorahoo was (1) employed with various clinics prior to MHC for a short period of time; (2) introduced himself to patients as a doctor; (3) spent prolonged amounts of time with patients; and (4) conducted exams on women without a female nurse present. The government opposed, filing a motion to dismiss. ECF No. 15. Hannah also filed a motion to strike extraneous exhibits and documents attached to the government's motion to dismiss. ECF No. 24. The court heard argument, and the matters are ripe for resolution.

## II.

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) addresses whether the court has subject-matter jurisdiction to hear the dispute." Ledford v. Eastern Band of Cherokee Indians, No. 1:20-cv-5-MR-WCM, 2020 WL 6693133, at *1 (W.D.N.C. Nov. 12, 2020), aff'd as modified, 845 F. App'x 260 (4th Cir. 2021); see also Fed. R. Civ. P.

12(b)(1). Subject-matter jurisdiction may be challenged as a facial or factual attack. Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc., 892 F.3d 613, 621 n.7 (4th Cir. 2018); Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). In a facial challenge, the defendant asserts that the facts alleged in the complaint are insufficient for the court to exercise subject-matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). As such, the court must assume the facts alleged are true. Id.

However, in a factual challenge, the defendant attacks the veracity of the facts alleged and argues "that the jurisdictional allegations of the complaint [are] not true." Wells v. Artrip, No. 1:16-cv-41, 2017 WL 1788385, at *2 (W.D. Va. May 3, 2017). Under a factual challenge, the "district court may then go beyond the allegations of the complaint and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings . . .," U.S. ex rel Vuyyuru v. Jadhav, 555 F.3d 337, 348 (4th Cir. 2009), but this does not convert the motion into a summary judgment proceeding, Kerns, 585 F.3d at 192. Moreover, when the defendant brings a factual challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply . . . ." Id. "If, however, the jurisdictional facts are intertwined with the facts central to the merits of the complaint, 'a presumption of truthfulness should attach to the plaintiff's allegations.'" Rich v. United States, 811 F.3d 140, 145 (4th Cir. 2015) (citing Kerns, 585 F.3d at 193).

In sum, for factual challenges, a Rule 12(b)(1) motion should only be granted when "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, Fredericksburg & Potomac R.R. Co., 945 F.2d 765, 768 (4th Cir. 1991). The plaintiff bears the burden of proving jurisdiction by a preponderance of

evidence regardless of whether the challenge is facial or factual. Jadhav, 555 F.3d at 347-48;

Richmond, 945 F.2d at 768; Bradford v. Mattis, No. 3:18-cv-570-HEH, 2018 WL 6834360, at

*2 (E.D. Va. Dec. 28, 2018).

### III.

In its motion, the United States asserts that the court lacks jurisdiction over Counts I

and II because:

1. If Plaintiff's allegations are true for purposes of this Motion, the nurse practitioner, Raschid A. Ghoorahoo, was not acting within the scope of his employment;
2. Although veiled as negligence, Plaintiff actually alleges an intentional tort, and the intentional tort exception to the FTCA, 28 U.S.C. § 2680(h), bars the lawsuit;
3. Plaintiff did not exhaust administrative remedies on her medical malpractice claim; and
4. The United States is immune from suit for the negligent retention claim under the discretionary function exception in 28 U.S.C. § 2680(a).

Def. Br. in Supp. of Mot. to Dismiss, ECF No. 16, at 1. The court will address each argument

in turn.

### A. The issue of sovereign immunity turns on Ghoorahoo's scope of employment, which cannot be resolved on the pleadings.

Because the United States is a sovereign, it is immune from suit unless it consents to

be sued. Criscione v. U.S. Nuclear Regul. Comm'n, 493 F. Supp. 3d 423, 429 (D. Md. 2020).

Its immunity extends to agencies and instrumentalities of a state. Regents of Univ. of

California v. Doe, 519 U.S. 425, 429 (1997); McCray v. Maryland Dept. of Transp., Maryland

Transit Admin., 741 F.3d 480, 483 (4th Cir. 2014). Sovereign immunity "deprives federal

courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign

immunity must dismiss the action for lack of subject-matter jurisdiction." Cunningham v. Gen.

Dynamics Info. Tech., Inc., 888 F.3d 640, 649 (4th Cir. 2018) (internal quotations omitted).

The defendant bears the burden of showing sovereign immunity. Hutto v. South Carolina Ret.

Sys., 773 F.3d 536, 543 (4th Cir. 2014).

In order for a suit to proceed against the United States, there must be an explicit waiver

of sovereign immunity, Lehman v. Nakshian, 453 U.S. 156, 160-61 (1981), "and the waiver

must be established by the statute itself[,]" Criscione, 493 F. Supp. 3d at 430; Lane v. Pena,

518 U.S. 187, 192 (1996). Absent an explicit waiver, courts must strictly construe the statute

in favor of the sovereign "in the absence of a clear statement from the United States waiving

sovereign immunity." Criscione, 493 F. Supp. 3d at 430; Sossamon v. Texas, 563 U.S. 277, 290

(2011).

Pursuant to 28 U.S.C. § 1346(b), the United States waives sovereign immunity for

claims:

> (1) against the United States; (2) for money damages, . . . (3) for
> injury or loss of property, or personal injury or death; (4) caused
> by the negligent or wrongful act or omission of any employee of
> the Government; (5) while acting within the scope of his office
> or employment; and (6) under circumstances where the United
> States, if a private person, would be liable to the claimant in
> accordance with the law of the place where the act or omission
> occurred.

F.D.I.C. v. Meyer, 510 U.S. 471, 477 (1994).

Under Virginia law, "an employer is liable for the tortious acts of his employee if the

employee was performing his employer's business and acting within the scope of his

employment." Parker v. Carilion Clinic, 296 Va. 319, 335, 819 S.E.2d 809, 819 (2018).

Employee conduct is within the scope of employment when "(1) the act was expressly or

impliedly directed by the employer, or is naturally incident to the business, and (2) it was

performed . . . with the intent to further the employer's interest." <u>Kensington Assocs. v. West</u>,
234 Va. 430, 432, 362 S.E.2d 900, 901 (1987). However, liability does not extend to an
employee's unauthorized tortious conduct that arises "wholly from some external,
independent, and personal motive on the part of the [employee] to do the act upon his own
account." <u>Lett v. Great E. Resort Mgmt., Inc.</u>, 435 F. Supp. 3d 700, 706 (W.D. Va. 2020)
(Dillon, J.). Specifically, "the relevant test to determine whether particular conduct is within
the scope of employment is whether the service itself, in which the tortious act was done, was
within the ordinary course of the employer's business." <u>Clehm v. BAE Sys. Ordinance Sys.</u>,
<u>Inc.</u>, 291 F. Supp. 3d 775, 792 (W.D. Va. 2017) (Urbanski, J.), <u>aff'd</u>, 786 F. App'x 391 (4th Cir.
2019). Courts can decide the scope of employment as a matter of law when the employee
conduct is either a slight deviation from or "marked and unusual departure" from the
employer's business. <u>Id.</u>

 At issue here is whether Ghoorahoo's alleged misconduct during his encounter with
Hannah constitutes an action within the scope of his employment with MHC. Although the
government argues that the issue whether Ghoorahoo's conduct was outside the scope of his
employment can be decided on the pleadings, the court does not agree.

 It is well settled that a federal employee who commits assault or battery is not acting
within the scope of their employment. <u>See</u> <u>Welch v. U.S. Dep't of Veterans Affairs</u>, No. 7:19-
cv-48, 2020 WL 929535, at *2 (W.D. Va. Feb. 26, 2020) (Urbanski, J.) ("The [FTCA] does not
. . . cover assault by a physician because a federal employee who commits assault would no
longer be acting within the scope of her employment."); <u>Lett</u>, 435 F. Supp. 3d at 708 (stating
that there is "abundant persuasive authority rejecting, as a matter of law, employer liability in

[sexual assault cases because] . . . an employer cannot be held liable for a sexual assault or battery committed by an employee."); Clehm, 291 F. Supp. 3d at 793-94 (granting summary judgment to employer where an employee sexually assaulted a coworker because the employee's assault was not "naturally incident to his job" nor "performed . . . with the intent to further the employer's interest[;]" rather, the conduct was an external and independent motive of the employee); Mary Doe v. United States, 769 F.2d 174, 175 (4th Cir. 1985) (affirming district court finding that an Air Force social worker who sexually assaulted minors was acting to further his own self-interest and was not acting within the scope of his employment); John Doe v. United States, 618 F. Supp. 71, 74 (D.S.C. 1985) (district court found child molestation by clinical social worker allegedly to satisfy his prurient interests to be an assault outside the scope of employment in circumstances where the child was being seen at a mental health clinic for a problem controlling his temper).

The United States asserts that under Fourth Circuit precedent, because Ghoorahoo was employed to perform medical services, his alleged assault of Hannah cannot be within the scope of his employment. ECF No. 16 at 18-19. It contends that Hannah alleges facts supporting sexual assault rather than faulty medical care or misdiagnosis. See Compl. at ¶¶ 20, 35 ("Ghoorahoo . . . massag[ed] her breast with his fingers [and] fondled her breast several times during the physical examination."); Admin. Claim, ECF No. 16-14, at 1-5 ("Ghoorahoo sexually molested [Hannah.]").

Hannah disagrees, arguing that the relevant question is "whether the service itself, in which the tortious act was done, was within the ordinary course of [the employer's] business."

Gina Chin & Assocs., Inc. v. First Union Bank, 260 Va. 533, 543, 537 S.E.2d 573, 578 (2000);

see Commercial Bus. Sys. v. BellSouth, Inc., 249 Va. 39, 44, 453 S.E.2d 261, 265 (1995).

First, Hannah distinguishes the assault and battery line of cases, such as Clehm, by noting that the court in those cases looked to whether the tortious act occurred within the course of the service generally provided by the employer's business. Specifically, Hannah notes that the conduct in those cases had nothing to do with the business of the employer, distinguishing Clehm was "outright sexual assault, not touching and fondling of breasts as part and parcel of a physical examination." ECF No. 25 at 16. Likewise, this case differs from Mary Doe and John Doe because in those cases the sexual assault bore no relation to any authorized treatment and was plainly outside the scope of the social worker's responsibilities. Unlike in these cases, the alleged inappropriate touching in this case here is bound up with Ghoorahoo's performance of the sports physical. Here, Hannah alleges that Ghoorahoo was authorized to perform a physical exam on Hannah, and physically touching his patient while using the stethoscope was part of that procedure. As such, Ghoorahoo's alleged misconduct was intertwined with his employment responsibilities.

Second, the court finds two cases recently decided by the Virginia Supreme Court to be instructive. In Parker v. Carilion Clinic, 296 Va. 319, 819 S.E.2d 809 (2018), plaintiff alleged the inappropriate disclosure of a prior diagnosis. The circuit court sustained defendant's demurrer and ruled as a matter of law that the clinic was not vicariously liable for the conduct of its employees who inappropriately disclosed medical information. The Virginia Supreme Court enunciated a test limiting respondeat superior liability to tortious acts performed within the scope of the duties of the employment and in the execution of the service for which the

employee was engaged. The court stated that "the employee must have committed the tort while actively engaged in a job-related service." 296 Va. at 339, 819 S.E.2d at 821. The court also looked to the motive of the alleged tortfeasor, indicating that its decisions have held that "respondeat superior liability cannot extend to an employer for an unauthorized tortious act by an employee arising wholly from some external, independent and personal motive on the part of the employee to do the act upon his own account." 296 Va. at 340, 819 S.E.2d at 821-22. The court noted that an employee's improper motive is neither dispositive of nor irrelevant to the issue of whether the act was within the scope of employment; merely, it is one factor to consider. 296 Va. at 341, 819 S.E.2d at 822. As such, the court found that Parker's complaint raised a rebuttable presumption that the employees were acting within the scope of their employment when they committed the alleged tort.[1]

In Our Lady of Peace, Inc. v. Morgan, 297 Va. 832, 832 S.E.2d 15 (2019), a nursing home assistant, Martin Martin, sexually abused and raped an 85-year-old resident. The circuit court held as a matter of law that Martin committed the molestation and rape while acting within the scope of his employment. The circuit court barred the nursing home from presenting any evidence at trial suggesting that Martin had acted outside of the scope of his employment when he molested and raped the victim. The jury returned a verdict for the estate of the victim, and the Virginia Supreme Court reversed. Applying the rebuttable presumption noted in Parker, the Virginia Supreme Court found that the circuit court erred by deciding

---

[1] The clinic conceded that the rebuttable presumption applied, but argued that the express allegations in the complaint rebutted the presumption that the employees were acting within the scope of their employment for the purposes of vicarious liability. Parker, 296 Va. at 341, 819 S.E.2d at 822. The Virginia Supreme Court noted that while this may have theoretical merit, it had no practical impact on this case. 296 Va. at 341-42, 819 S.E.2d at 822.

whether the rape was within the scope of employment as a matter of law. "Here, the original complaint expressly alleges that all of Martin's wrongful acts — including the rape — occurred while he was performing job-related services within the scope of his employment. This simultaneity allegation, to be sure, is just that, an allegation. But when reinforced by the presumption applicable to respondeat superior claims, it is sufficient, though barely so, to survive the pleading stage of this unique case." 297 Va. at 850, 832 S.E.2d at 26. The Virginia Supreme Court held that the circuit court erred when it removed the scope-of-employment issue from the jury. The court stated:

> It is possible to hypothesize how such acts could occur "while the employee was in fact performing a specific job-related service for the employer" and "while [the employee was] actively engaged in a job-related service," Martin's job-related services included undressing residents, changing their undergarments and diapers, as well as bathing them. If Martin's acts of molestation occurred simultaneously with his performance of these job-related services, a reasonable jury could infer that he acted from a mixed motive and not "wholly from some external, independent, and personal motive."

297 Va. at 849, 832 S.E.2d at 25. (quoting Parker, 296 Va. at 338-40, 819 S.E.2d at 809).

The same is true with the Virginia Supreme Court's decision in Plummer v. Center Psychiatrists, Ltd., 252 Va. 233, 234-37, 476 S.E.2d 172, 172-75 (1996). Plummer alleged that her psychologist sexually assaulted her, and the circuit court granted the defendant's demurrer, concluding as a matter of law that the psychologist was not acting within the scope of his employment when he engaged in sexual intercourse. The Virginia Supreme Court reversed, holding that the plaintiff's allegations that the sexual assault occurred during the course of the counseling and therapy created a jury issue as to whether the psychologist was acting within the scope of his employment.

Given the allegations of this case, the Virginia Supreme Court's decisions in <u>Parker</u>, <u>Our Lady of Peace</u>, and <u>Plummer</u> support denial of the motion to dismiss in favor of consideration of the issue of Goorahoo's scope of employment following factual development.

Although decided at the Rule 56 stage, three federal cases from Virginia brought by prison inmates alleging sexual assault support further factual development of the scope of employment issue. <u>Heckenlaible v. Virginia Peninsula Reg'l Jail Auth.</u>, 491 F. Supp. 2d 544, 552 (E.D. Va. 2007) (finding that there was a jury question as to whether an officer who was tasked with observing an inmate was acting within the scope of his employment by abusing his authority and engaging in a sexual encounter with the inmate after entering her cell under the pretense of a cell search); <u>Heywood v. Va. Peninsula Reg'l Jail Auth.</u>, 217 F. Supp. 3d 896, 901 (E.D. Va. 2016) (same). <u>Wright v. Virginia Peninsula Reg'l Jail Auth.</u>, No. 2:19-cv-189, 2021 WL 963496 (E.D. Va. Mar. 15, 2021), is instructive as well. In <u>Wright</u>, the court found a question of fact existed where a supervising officer was alleged to have sexually assaulted an inmate. Specifically, on one occasion, plaintiff said that she was standing on a chair when defendant assaulted her from behind. Defendant contended that he was trying to steady plaintiff while she stood on the chair by putting his hands on her waist. On summary judgment, the court held that "this factual dispute weighs heavily against resolving, as a matter of law, the scope of employment issue in favor of VPRJA because [the supervising officer's] subjective motivations are unclear and a jury could conclude that he 'committed the tort while actively engaged in a job-related service.'" <u>Id.</u> at *10. Because "[this case] reflect[ed] a situation where special circumstances related to employment facilitated the alleged intentional tort[,]"

the court found that a question of fact existed as to whether the supervising officer acted within the scope of his employment when the sexual assault occurred. Id. at *9-10.

The government opposes, principally relying on Webb v. United States, 24 F. Supp. 2d 608 (W.D. Va. 1998), Lett v. Great E. Resort Mgmt., Inc., 435 F. Supp. 3d 700 (W.D. Va. 2020), and Lins v. United States, 847 F. App'x 159 (4th Cir. 2021). In Webb, a doctor was alleged to have sexually assaulted plaintiff while treating her for a panic disorder. Following an evidentiary hearing on the issue of scope of employment, the court concluded that the doctor was acting outside the scope of his employment because the assault occurred when the healthcare provider was supposed to be treating plaintiff for a panic disorder where no disrobing or physical contact was required. After hearing the evidence, the court concluded that "the alleged sexual battery was neither part of Webb's treatment or therapy nor consented to by her, making [the doctor's] subsequent course of action wholly rooted in some external, independent, and personal motive on his part." 24 F. Supp. 2d at 619.

In Lett, plaintiff alleged that a massage therapist assaulted her while performing a massage. Lett contended that the massage therapist "moved the drape, leaving [her] completely uncovered from the waist down, touched and fondled [her] in her pubic area, breasts, and anal area, and kissed [her] on the mouth." Lett, 435 F. Supp. 3d at 703. On summary judgment, the court concluded that the massage therapist was not acting within the scope of his employment when the alleged inappropriate touching and kissing occurred because an act of sexual assault or battery is a wholly distinct act from a job-related activity. Id. at 708. Distinguishing Our Lady of Peace, the Lett court stated "[h]ere, by contrast, [the massage therapist] was not required to touch the private areas of people he was massaging; indeed, he was expressly

13

forbidden from doing so. Unlike <u>Our Lady of Peace</u>, therefore, it cannot be said that the alleged battery occurred while [the massage therapist] was performing a job-related service." <u>Id.</u> at 706.

In <u>Lins</u>, the Fourth Circuit applied Maryland law to hold that the Department of Veterans Affairs ("VA") was not vicariously liable for a sexual relationship one of its therapists had with a VA patient. In <u>Lins</u>, a VA therapist planned to attend a wedding with one of her patients in contravention of a VA policy prohibiting clinical employees from engaging in "dual relationships" with their patients. Under Maryland law, to be acting within the scope of employment, an employer must authorize an employee's conduct, or, at minimum, the conduct must be "incident to the performance of the duties entrusted to [her] by the master." <u>Lins</u>, 847 F. App'x at 167. The Fourth Circuit reasoned that because "[e]xploiting a therapeutic relationship in order to engage in a sexual relationship with a patient is antithetical to the VA's business of healing veterans," <u>id.</u>, the therapist was not acting within the scope of her employment as a matter of law.

Upon review, each of the cases relied upon by the government is distinguishable.  In both <u>Webb</u> and <u>Lett</u>, the issue of scope of employment was not decided on the pleadings, but rather upon consideration of evidence. <u>Lins</u> is inapposite because the conduct alleged there violated VA policy, and, as such, could not be considered to be authorized. As such, the court is not persuaded by the government's reliance on these cases.

On balance, the court cannot grant the motion to dismiss as to Count I. Because Hannah alleged that Ghoorahoo's sexual assault occurred when he was using his stethoscope during her sports physical, under Virginia Supreme Court precedent, the court cannot find, as

a matter of law, that Ghoorahoo was acting outside the scope of his employment. At this stage, a question of fact exists as to whether Ghoorahoo was motivated by some mixed motive not wholly separate from his job-related activities or whether he was motivated by some independent self-interest.

### B. Application of the intentional tort exception likewise cannot be resolved on the pleadings.

For the same reasons, based on the pleadings alone, the court cannot determine whether the intentional tort exception bars Hannah's claims. The intentional tort exception applies to "[a]ny claim arising out of assault [or] battery . . . ." See 28 U.S.C. § 2680(h). A separate statute provides, however, that the intentional tort exception to sovereign immunity does "not apply to assault or battery arising out of negligence in the performance of medical, surgical, dental, or related functions." 42 U.S.C. § 233(e). Under the facts alleged here, Ghoorahoo acted improperly while using his stethoscope during an authorized physical examination. Unlike in Mary Doe, where the Fourth Circuit determined that "the Air Force officer clearly was acting for his personal gratification rather than within the scope of his employment," 769 F. 2d 174, 175 (4th Cir. 1985), here that issue cannot be determined from the pleadings and requires factual development. The same is true of the social worker in John Doe who molested a child while treating him for an emotional issue. As was the case in Webb, the court cannot determine from the pleadings alone whether the intentional tort exception applies or whether this case falls within the exclusion for medical procedures found in § 233(e). Rather, the Webb court allowed discovery and held an evidentiary hearing on the scope of employment issue. After hearing the evidence, the court declined to allow plaintiff to pursue an amended complaint alleging medical negligence under § 233(e), concluding that "[t]he

gravamen of Webb's case remains her allegations of intentional sexual battery. Having heard her testimony as to the events of her contacts with Dr. Latif, I find that this is simply not a negligence case." 24 F.Supp.2d at 620. Given the specific allegations of this case, in which the alleged unlawful touching occurred while Ghoorahoo was using the stethoscope to listen to plaintiff's heart, further factual development is required before the court can determine whether §233(e) applies in this case or whether the claim is barred by the intentional tort exception.

### C. Plaintiff exhausted her administrative remedies.

The government asserts that Hannah did not exhaust her administrative remedies, arguing that she proceeded administratively on an intentional tort theory in contrast to the medical negligence claim raised in Count I. The court disagrees, as the facts alleged in the administrative claim concerning Ghoorahoo's inappropriate use of the stethoscope are the same as those raise in her federal court complaint. As such, the government plainly was on notice of the facts supporting Hannah's claim. In her opposition brief, Hannah cited the regulation and several decisions supporting the premise that it is notice of the facts underlying the incident at issue, as opposed to legal theory, that matters for administrative exhaustion purposes. See 28 C.F.R. § 14.2(a) (requiring a written notification of an incident); Murrey v. United States, 73 F.3d 1448, 1452 (7th Cir. 1996) ("But as no statement of legal theories is required, only facts plus a demand for money, the claim encompasses any cause of action fairly implicit in the facts."); Ahmed v. United States, 30 F.3d 514, 516-17 (4th Cir. 1994) ("Section 2675(a) of Title 28 and 28 C.F.R. § 14.2(a) require two elements for sufficient presentment of a claim to an agency: 1) written notice sufficient to cause the agency to investigate, and 2) a

sum-certain value on the claim."); Dynamic Image Technologies, Inc. v. United States, 221 F.3d 34, 40 (1st Cir. 2000) ("The test is an eminently pragmatic one: as long as the language of an administrative claim serves due notice that the agency  should investigate the possibility of particular (potentially tortious) conduct and includes a specification of the damages sought, it fulfills the notice-of-claim requirement."); Williams v. United States, 932 F. Supp. 357, 61 (D.D.C. 1996) (Administrative claim need not list legal theory, such as medical malpractice); Estate of Trentadue v. United States, 397 F.3d 840, 852-53 (10th Cir. 2005) (citing cases holding the administrative notice provision requires "notice of facts and circumstances underlying a claim rather than the exact grounds upon which plaintiff seeks to hold the government liable."); Rooney v. United States, 634 F.2d 1238, 1242 (9th Cir. 1980) (Administrative claim not required to state legal theory of recovery). In its reply brief, the government made no effort to distinguish this persuasive precedent. The government's motion to dismiss for failure to exhaust is **DENIED**.

### D. The discretionary function exception applies to bar Count II.

The discretionary function exception provides the United States with immunity from "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). To determine whether the discretionary function applies, courts use a two-pronged test. First, "a court considers whether the challenged government conduct involves an element of judgment or choice." Rich v. United States, 811 F.3d 140, 144 (4th Cir. 2015) (citing United States v. Gaubert, 499 U.S. 315, 322 (1991)). There is no judgment or choice in government conduct

when "a statute, regulation, or policy prescribes a specific course of action." Id. at 144; Berkovitz v. United States, 486 U.S. 531, 536 (1988). "When established government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Gaubert, 499 U.S. at 324.

"Second, if the challenged conduct does involve an element of judgment, the court must then determine whether the judgment was one that the exception was designed to protect, namely, a judgment based on considerations of public policy." Rich, 811 F.3d at 144. As such, "the exception protects only governmental actions and decisions based on considerations of public policy." Id. at 323.

Hannah asserts that the United States "was aware [Ghoorahoo] was spending long periods of time with student patients, that Ghoorahoo did not have a chaperone present when he performed examinations of female patients, and that Ghoorahoo was misrepresenting himself as a doctor when he introduced himself to students[, and that he] worked for a number of different clinics in his past employment and did not stay at any of them for very long." Compl. at ¶ 55. Because of this, Hannah argues that the United States had no discretion to retain Ghoorahoo.

1. **MHC's decision to retain Ghoorahoo was not mandated, but rather involved judgment and choice.**

To escape the application of the discretionary function exception, Hannah must show that some federal statute, regulation, or policy required MHC to fire Ghoorahoo for his claimed misconduct. To support this assertion, Hannah points to MHC's policies and procedures, where, among other things, MHC promises to provide quality services "in a safe,

effective, recipient-centered, timely, equitable, and recovery-oriented fashion" while minimizing risk to patients and providers alike. Compl. at ¶ 11. Hannah also points to 42 U.S.C. §§ 233(h) and (i), which states

> (h) The Secretary may not approve an application under subsection (g)(1)(D) unless the Secretary determines that the entity—
> (1) has implemented appropriate policies and procedures to reduce the risk of malpractice and the risk of lawsuits arising out of any health or health-related functions performed by the entity;
> (2) has reviewed and verified the professional credentials, references, claims history, fitness, professional review organization findings, and license status of its physicians and other licensed or certified health care practitioners, and, where necessary, has obtained the permission from these individuals to gain access to this information[.]
>
> . . .
>
> (i)  Authority of Attorney General to exclude health care professionals from coverage.
> (1) Notwithstanding subsection (g)(1), the Attorney General, in consultation with the Secretary, may on the record determine, after notice and opportunity for a full and fair hearing, that an individual physician or other licensed or certified health care practitioner who is an officer, employee, or contractor of an entity described in subsection (g)(4) shall not be deemed to be an employee of the Public Health Service for purposes of this section, if treating such individual as such an employee would expose the Government to an unreasonably high degree of risk of loss because such individual—
> (A) Does not comply with the policies and procedures that the entity has implemented pursuant to subsection (h)(1)[.]

42 U.S.C. §§ 233(h) and (i).

In light of these statutory provisions, Hannah alleges that MHC knew Ghoorahoo was (1) employed by various clinics for short durations; (2) spent prolonged amounts of time with patients; (3) introduced himself to patients as a doctor; and (4) performed examinations on

female patients without a female nurse present. Compl. at ¶¶ 15-20. Hannah contends that

MHC did not follow its own policies, nor did it follow the policies outlined in §§ 233(h) and

(i). As such, Hannah states that MHC did not have discretion to retain Ghoorahoo because it

knew of behavior that went against federal and MHC internal policies. ECF No. 25 at 27-28.

This argument misses the mark.  Section 233(h) requires any entity seeking affiliation

with the Public Health Service to implement policies and procedures to reduce the risk of

medical malpractice and lawsuits arising out of any health-related functions performed by the

entity and to review and verify the credentials of its licensed health care practitioners. Section

233(i) permits the Attorney General to exclude health care professionals from coverage where

they do not comply with the policies and procedures developed by the entity to reduce the

risk of medical malpractice and lawsuits. Within these broad parameters, MHC retains wide

discretion and judgment in determining whether to retain individual practitioners, including

Ghoorahoo.

Consistently, review of the Health Center Program Compliance Manual issued by the

Health Resources and Services Administration, an agency of the United States Department of

Health and Human Services, confirms the discretion vested in MHC to credential and ensure

the professional qualifications of clinical staff.  The introduction to the manual states as

follows:

> Each health center is responsible for maintaining its operations,
> including developing and implementing its own operating
> procedures, in compliance with **all** Health Center Program
> requirements and all other applicable Federal, state, and local laws
> and regulations. This includes but is not limited to those
> protecting public welfare, the environment and prohibiting
> discrimination; state facility and licensing laws; state scope of
> practice laws; Centers for Medicare and Medicaid Services (CMS)

> Conditions for Coverage for FQHCs; and State Medicaid
> requirements. In fulfilling all of these oversight and compliance
> responsibilities, a health center may wish to consult its private
> legal counsel. Health centers may also direct questions to the
> designated points of contact for these programs.[2]

Further, review of the Clinical Staffing section of the Health Center Program Compliance
Manual confirms that each health center is required to establish operating procedures for
credentialing and maintaining the privileges of clinical staff members.[3] The substance of these
policies are left to the governing board of each health center. The United States attached the
MHC Personnel Policy and Procedure Manual as Exhibit 2 to its motion to dismiss. Review
of the MHC Personnel Policy and Procedure Manual likewise does not support an argument
that a policy existed requiring MHC to discipline Ghoorahoo for the concerns Hannah
identifies as existing prior to the physical examination on May 2, 2018.

Courts in this circuit have consistently applied the discretionary function exception to
claims of negligent retention. For example, in Suter v. United States, 441 F.3d 306 (4th Cir.
2006), plaintiffs sued the FBI for retaining an undercover agent who the FBI allegedly knew
had committed criminal acts against the plaintiff. The Fourth Circuit found that plaintiffs'
negligent hiring and supervision claim was barred by the discretionary function exception
because "[c]ourts have repeatedly held that government employers' hiring and supervisory
decisions are discretionary functions." Id. at 312 n.6; see LeRose v. United States, 285 F. App'x
93, 97 (4th Cir. 2008) ("The BOP's decisions regarding the hiring, supervision and retention
of [an employee] are precisely the type of decisions that are protected under the discretionary

---

[2]https://bphc.hrsa.gov/programrequirements/compliancemanual/introduction.html.
[3]https://bphc.hrsa.gov/programrequirements/compliancemanual/chapter-5.html.

function exception."); Sharrer v. United States, No. 7:18-cv-356, 2019 WL 1394376, at *5 (W.D. Va. Mar. 27, 2019) ("Numerous Fourth Circuit courts have held that decisions regarding the hiring, supervision, and retention of employees fall within the discretionary function test."); Anderson v. United States, No. 8:12-cv-3203, 2015 WL 9918406, at *10 (D.S.C. Oct. 9, 2015) ("In the Fourth Circuit, decisions regarding the hiring, supervision, and retention of employees are protected under the discretionary function exception to the FTCA."); Baum v. United States, 986 F.2d 716, 720-21 (4th Cir. 1993) (holding that employee retention is "[a decision] which we expect inherently to be grounded in considerations of policy[ ]").

While the court in Lins found that the discretionary function exception not to apply to plaintiff's negligent supervision claim, that case was different because the VA failed to implement a specific course of action mandated by federal policy. VA policy prohibited employees from engaging in "dual relationships" with patients, requiring supervisors to reassign the patient to a different therapist and requiring the therapist to avoid all contact with said patient. "[After] Dr. Burns' supervisors discovered that she planned to attend a wedding with Mr. Lins . . .[, they] met with Dr. Burns to inform her that her conduct was not appropriate, but allowed [her] to continue to treat Mr. Lins as a patient. [Then,] following complaints from another of Dr. Burns' male patients, the VA took away her private office, assigned her to a cubicle in an administrative area, terminated her clinical privileges, and barred her from treating Lins." Lins, 847 F. App'x at 169. Because VA policy required the therapist's supervisors to take specific actions that they did not take, the court found the discretionary function exception not to apply. As the Supreme Court noted in Gaubert, "[t]he requirement of judgment or choice is not satisfied if a federal statute, regulation or policy specifically

prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." 499 U.S. at 322. Because MHC's decision to retain Ghoorahoo was not mandated by federal law or policy, the discretionary function exception applies to bar Count II, alleging negligent retention.

Further, although MHC is a federally qualified health center under the Public Health Service Act, the federal government does not dictate its employment policies and procedures. Rather, each federal health center is required to have its own governing board which establishes general policies for the center. See 42 U.S.C. § 254b(k)(3)(H). In short, MHC is not a federal agency that promulgates rules sufficient to waive the sovereign immunity of the United States. See Gaubert, 499 U.S. at 322 (the discretionary function exception does not apply only when a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow"); M.G. v. United States, No. 19-cv-1252-TWR-AHG, 2020 WL 6271186, at *5 (S.D. Cal. Oct. 23, 2020) ("[I]t is unlikely each of the numerous health centers across the country deemed to be Public Health Center employees for purposes of requiring certain suits to be brought against the United States could promulgate their own policies that widened the potential liability against the United States' fisc.").

Based on the applicable case law, MHC's decision to retain Ghoorahoo required judgment and choice, and the discretionary function exception applies. Moreover, even if Hannah's assertions that MHC knew that Ghoorahoo spent too much time with patients, introduced himself as a doctor, and had no female nurse present when performing exams on women are true, she can point to no federal statute, regulation, or policy that required MHC to terminate his employment under these facts.

2. **MHC's decision to maintain Ghoorahoo's employment was subject to policy considerations.**

The Fourth Circuit has made clear that federal employee retention is subject to policy considerations. In LeRose, the court stated:

> The hiring of an employee involves several public policy considerations including the weighing of qualifications of candidates, weighing of the background of applicants, consideration of staffing requirements, evaluation of the experience of candidates, and assessment of budgetary and economic considerations. Because this process is multi-faceted, it is precisely the type of decision that Congress intended to shield from liability through the discretionary function exception.

LeRose, 285 F. App'x at 97.

MHC's decision to retain Ghoorahoo is subject to several policy considerations. When MHC was alerted of his Hannah's alleged sexual assault, MHC removed Ghoorahoo, performed an investigation, and fully cooperated with both the Virginia State Police and Board of Health Professionals. MHC asserts that those decisions involve policy considerations, such as "whether to credit [Hannah's] mother's allegation over Ghoorahoo's denial . . . whether to commit resources to investigate the allegations . . . [and] what staff to hire for which positions and whether to employ full-time chaperones, or, as in this case, to require a nurse with other responsibilities to serve as a chaperone when required in the provider's judgment." ECF No. 16 at 34-35.

In sum, because there is no federal statute, regulation, or policy requiring MHC to discipline Ghoorahoo under these facts, and MHC's judgment to retain Ghoorahoo involved

policy considerations, the discretionary function exception to the waiver of sovereign immunity applies. As such, the court **GRANTS** the motion to dismiss as to Count II.[4]

## IV.

Associated with her motion to dismiss, Hannah moves to strike the government's exhibits and extraneous materials attached to and embedded in the government's brief in support of its motion to dismiss. ECF No. 24. Hannah contends that by including the additional and unauthenticated exhibits, the government is improperly trying to litigate the substantive issues of the case rather than the jurisdictional ones appropriate at this stage. Id. at 1-2. As such, Hannah requests the court to strike Exhibits 1-13, 15-16, pages 7-12 of Exhibit 14, and all other extraneous links and attachments located within the government's brief.

At the outset, it is worth noting that the court has not considered, for the purposes of its jurisdictional inquiry, most of the exhibits and references provided by the government. The only exhibits and references considered by the court were Exhibit 2, the MHC Personnel Policy and Procedure Manual, and the hyperlink to the Health Center Program Compliance Manual issued by the Health Resources and Services Administration. Thus, as to the vast majority of the items objected to by Hannah, her motion is moot and is **DENIED** as such.

---

[4] The United States also seeks to reduce damages, bar punitive damages and pre-judgment interest, and deny a jury demand. ECF No. 16 at 38. Hannah opposes, arguing that the government did not properly plead these issues under Federal Rule of Civil Procedure 12(f). However, pursuant to case law and statutes, this request must be granted. Since Hannah requested $2 million in her administrative claim and did not allege new evidence or facts in her Complaint, she may not recover in excess of $2 million. See Kielwien v. United States, 540 F.2d 676, 679-80 (4th Cir. 1976). Pre-judgment and punitive damages may not be recovered. See 28 U.S.C. § 2674 (The United States "shall . . . not be liable for interest prior to judgment or for punitive damages."). Lastly, suits against the United States under the FTCA are "tried by the court without a jury." See 28 U.S.C. § 2402. For these reasons, the government's request should be granted.

With regard to the two manuals considered by the court, Hannah's motion fails to note the difference between a motion under Rule 12(b)(6) and Rule 12(b)(1). "In ruling on a Rule 12(b)(1) motion, the court may consider exhibits outside the pleadings." Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995). "Indeed, the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. (internal citation and quotation omitted). On a Rule 12(b)(1) motion, "[a] trial court may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).

Further, the policies and procedures of MHC contained in Exhibit 2 are integral to the allegations in the complaint. In paragraphs 25 and 26 of the complaint, Hannah alleges that Ghoorahoo was subject to "Monroe Health Center policies and procedures applicable to the provision of medical care at Monroe Health Center" and "was subject to the supervision and management of Monroe Health Center." Where plaintiff makes such a reference to an exhibit in her complaint, the court may consider it, even on a Rule 12(b)(6) motion, if it is "integral to the complaint and authentic." Goines v. Valley Cmty. Serv. Bd., 822 F.3d 159, 164 (4th Cir. 2016); Sec'y of State For Defence v. Trimble Nav. Ltd., 484 F.3d 700, 705 (4th Cir. 2007); Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004); Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999). Hannah does not challenge the authenticity of the manuals; rather, she only asks that the court not consider them in deciding the jurisdictional immunity issue.

Accordingly, Hannah's motion to strike defendant's exhibits is **DENIED**.

**V.**

For these reasons, at this stage of the pleadings, the court cannot, as a matter of law, find that Ghoorahoo acted outside the scope of his employment when he used the stethoscope and allegedly touched plaintiff's breast during her sports physical. However, as the governing statute and policies make clear, MHC's retention of Ghoorahoo in light of the concerns she identified is subject to judgment and choice, and the discretionary function exception bars Hannah's negligent retention claim. Accordingly, the court **DENIES** the motion to dismiss Count I and **GRANTS** the motion to dismiss Count II. ECF No. 15. The court also **DENIES** motion motion to strike exhibits. ECF No. 24.

An appropriate order will be entered.

Entered: January 11, 2022

Michael F. Urbanski
Chief U.S. District Judge
2022.01.11 17:17:48 -05'00'

Michael F. Urbanski
Chief United States District Judge